UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-00017-JRO-CMM |
| | ) | |
| JARED M. GRAVES, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS**

Before the Court are Defendant Jared Graves's motions to suppress. Dkts. [37] and [51]. Graves faces two charges: (1) possession with intent to distribute controlled substance in violation of 21 U.S.C. § 841(a)(1); and (2) unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Dkt. 79 (Second Superseding Indictment).

Graves's motion to suppress seeks "an order suppressing all evidence obtained as a result of two independent constitutional violations occurring on June 30, 2025." Dkt. 37 at 1. First, Graves argues that law enforcement's K9 free air sniff of his vehicle during a traffic stop unconstitutionally prolonged the stop. Second, Graves argues that the subsequent search warrant for his residence was constitutionally deficient because it "rest[ed] almost entirely on the uncorroborated word of a confidential informant whose reliability, basis of knowledge, and motivations were never established before the issuing magistrate." *Id.*

Graves also requests a *Franks* hearing to probe the motives of the officer who sought the warrant. Dkt. 39 at 25 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Graves argues that officer sought the search warrant with reckless disregard for the truth when he failed to include information about the confidential informant ("CI") in the probable cause affidavit supporting the warrant. Graves identifies two categories of omitted information, both regarding the CI's reliability.

The Court held an evidentiary hearing on May 7, 2026, to resolve issues of material fact. Dkt. 76. On the same date, the Court held a pre-*Franks* hearing to give Graves further opportunity to make a substantial preliminary showing required for the Court to set a *Franks* hearing. *Id.* Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings of fact and conclusions of law.

As to the traffic stop, the Court determines that Officer Knopp had objectively reasonable suspicion of Graves's drug activity to prolong Graves's traffic stop to permit the K9 sniff pursuant to the collective knowledge doctrine. As to the home search, the magistrate issuing the warrant had a substantial basis to find probable cause because of the evidence connecting Graves and methamphetamine to Graves's home. This nexus alongside the CI's information are adequately reflected in the probable cause affidavit and established a substantial basis for probable cause to search the home. Even if they did not, the good faith exception would apply. As to the *Franks* hearing, Graves may not probe further into the motives behind the officer who sought the search warrant

2

because Graves fails to make the necessary substantial preliminary showing of a materially false omission.  Graves's motions[1] are accordingly **DENIED.**

## I. FINDINGS OF FACT

Detective Travis Clements is a police officer with the Terre Haute Police Department currently assigned to the Vigo County Drug Task Force (DTF).  Dkt. 37-1 at 2.  He has served as a police officer since 2017 and on the drug task force since 2024.  *Id.*  Officer Jeffrey Knopp is an officer with the Terre Haute Police Department and a certified K9 handler through American Working Dogs in Narcotic and Patrol Detector.  Dkt. 37-2 at 1.  The Court found Officer Knopp credible.

Detective Clements received information from a CI that a man known as "Jared" was dealing large quantities of methamphetamine in Terre Haute.  Dkt. 37-1 at 6.  The CI reported being inside Jared's home within the past 72 hours, seeing between one and five pounds of methamphetamine inside the home, and observing that it looked like Jared runs his own business.

The CI who supplied Detective Clements with this information had a track record of credibility and reliability.  Vigo County DTF previously seized drugs from a different target after the CI provided information to support a search warrant.  Separately, the CI told law enforcement when another target would be

---

[1] Graves styles his motions as two motions, a motion to suppress, dkt. 37, and a supplemental motion to suppress, dkt. 51.  The Court notes that Graves does not ask for any additional relief and that his later filings, dkts. 51–53, can also be read as motions to supplement or amend his previous filings.  The Government had no objection to Graves submitting the later filings.  Dkt. 50 ¶ 3; Dkt. 51 at 1.

3

traveling to Indianapolis to purchase methamphetamine. When the Indiana State Police stopped that target, they corroborated this lead by finding "a large quantity of methamphetamine in the target's possession." Dkt. 37-1 at 7.

On June 20, 2025, Detective Clements drove to the intersection where the CI said Jared lived, which Detective Clements identified as 2341 Seabury Avenue in Terre Haute. There, the detective observed a parked silver car with a black stripe matching the CI's description of Jared's car. *Id.* The car's registration showed it was registered to Jared Graves of 2341 Seabury Avenue. *Id.* That same day, the CI told Detective Clements there may be seven ounces of methamphetamine concealed inside speakers in Graves's trunk. Hearing Ex. 8 at 9; Dkt. 37-3 at 15:28–15:38.

Detective Clements saw a man matching the CI's description of Graves leave the home and enter the silver car with a black stripe. Dkt. 37-1 at 6. The detective followed the car and recorded it going 37 miles per hour in a 30-mile-per-hour zone. *Id.*

The detective radioed K9 Officer Knopp, informed him that the speeding car might have seven ounces of methamphetamine in it, and asked him if he was available to conduct a traffic stop. Dkt. 59-2 at 04:24–04:30. Before the stop, Detective Clements relayed to Officer Knopp that a man named Jared Graves was the target of a drug investigation and that Detective Clements watched a man leave the house and get into the silver car, which matched the CI's description of Graves and his car. *Id.* at 04:24–04:30, 06:10–06:27. Detective

4

Clements told Officer Knopp he was not sure if Jared Graves was the driver of the car. *Id.* at 06:10–06:27.

Officer Knopp stopped the car and asked the driver for his license. It was Jared Graves's license. Officer Knopp then went back to his patrol car and contacted Detective Clements. He told the detective that the driver was in fact Jared Graves. At this moment, approximately one and a half minutes had passed since Officer Knopp pulled over Graves.

Officer Knopp then returned to the silver car and directed Graves to exit the vehicle. Dkt. 37-2 at 1. Body camera footage shows that Officer Knopp told Graves the reason for the stop was "speed." Officer Knopp also testified that he instructed Graves to exit the vehicle as protocol for conducting a K9 sniff. After the officer's lawful order that Graves exit the vehicle, Graves "leaned over a bit, and reached under the left side of the steering wheel with his left hand." Dkt. 60 at 4. In response, the officer put his hand on his service weapon and ordered Graves again to step out. Graves complied. The two men waited on the side of the road for another officer to arrive. Officer Knopp testified that during this time he took no steps toward issuing a speeding ticket.

A few minutes later, a second officer arrived at the scene. Officer Knopp immediately initiated the K9 sniff. Eight minutes elapsed from the time Officer Knopp initiated the stop and this point. The K9 gave a positive alert within a minute, and officers immediately found a 3-gram bag of methamphetamine on the driver's seat. Dkt. 37-1 at 6. A further search of the trunk—which contained

5

two speakers—revealed another 2- to 3-gram bag of methamphetamine lying under or close to the speakers.  Dkt. 59-3 at 40:32–40:36; Dkt. 37-1 at 6.

Detective Clements later arrived at the traffic stop.  He remarked to Graves that he would be applying for a search warrant for his home.  He acknowledged that the warrant "may not be granted."  Dkt. 51-1 at 05:27.  Officer Knopp testified that he never issued Graves a ticket for excessive speed.

Citing the above facts, although omitting mention of the CI's "bad" tip that seven ounces of methamphetamine would be found in the car's speakers, Detective Clements applied for and obtained a search warrant for Graves's home. The search revealed approximately 170 grams (less than half a pound) of methamphetamine, other drugs and paraphernalia, and seven guns.

## II. CONCLUSIONS OF LAW AND DISCUSSION

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).  A traffic stop constitutes a "seizure" under the Fourth Amendment, so it is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996).

6

## A.    Traffic Stop

Graves cannot show that the traffic stop was unreasonable under the Fourth Amendment because Officer Knopp had reasonable suspicion to prolong the stop to run his K9 pursuant to the collective knowledge doctrine.

Traffic stops, like *Terry* stops, require only reasonable suspicion of a traffic violation since they are typically brief detentions. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021) (en banc). "The Fourth Amendment permits brief investigative stops—such as the traffic stop in this case—when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981), and citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968)). In *Rodriguez v. United States*, 575 U.S. 348, 350 (2015), the Supreme Court held that prolonging a traffic stop beyond the time reasonably required to issue a traffic ticket violated the Fourth Amendment's requirement that seizures not be unreasonable. "[T]o independently justify prolonging the stop," an officer must have "reasonable suspicion of other criminal activity." *Cole*, 21 F.4th at 428 (citing *Rodriguez*, 575 U.S. at 355).

Graves concedes that the Government's reasonable suspicion of speeding provided a lawful basis to initiate the stop. Graves argues that one and a half minutes into the stop Officer Knopp deviated from the traffic-enforcement mission when he called Detective Clements to report stopping Graves rather than begin to process a speeding ticket. Dkt. 39 at 9. In other words, Graves

maintains that under *Rodriguez* and its progeny the officers unreasonably prolonged the stop to conduct a drug investigation in violation of his rights. The question then is whether Officer Knopp had reasonable suspicion of independent criminal activity to justify prolonging the stop at that moment. The Court concludes that he did under the collective knowledge doctrine.

"When more than one police officer is involved in the reasonable-suspicion analysis, courts consider their collective knowledge." *United States v. Street*, 917 F.3d 586, 596 (7th Cir. 2019). "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Williams*, 627 F.3d 247, 252 (7th Cir. 2010). The officer stopping a vehicle need not have any knowledge of the facts underlying the requesting officer's reasonable suspicion. *See id.* at 253.

The collective knowledge doctrine to applies when "(1) the officer taking the action . . . act[s] in objective reliance on the information received, (2) the officer providing the information—or the agency for which he works—. . . ha[s] facts supporting the level of suspicion required, and (3) the stop . . . [is] no more intrusive than would have been permissible for the officer requesting it." *Id.* at 252–53 (citing *United States v. Nafzger*, 974 F.2d 906, 911 (7th Cir. 1992)).

### 1.    The facts supporting reasonable suspicion

Detective Clements knew specific facts that gave him a reasonable basis to suspect Graves of criminal drug activity. Detective Clements's CI, whose

information had previously aided police, reported seeing one to five pounds of methamphetamine at Graves's house 72 hours before the stop.  The CI told Detective Clements that Graves was supposed to be driving to front someone seven ounces of methamphetamine, so that amount might be in Graves's vehicle. Detective Clements visited the house where the CI said Graves lived.  There he saw a car registered to Jared Graves parked at the address listed on that car's registration.  This car matched the description given by the CI.  Detective Clements watched a man who matched the CI's description of Graves leave the house at that address and get into that car.  At this point, with these facts and the CI's reliable track record, Detective Clements had reasonable suspicion to briefly stop Graves and run a K9 to investigate drug activity.  *See Adams v. Williams*, 407 U.S. 143, 146–47 (1972) (finding that the tip of a known informant who provided helpful information in the past carried "enough indicia of reliability to justify the officer's forcible stop"); *contra United States v. Lopez,* 907 F.3d 472, 481 (7th Cir. 2018) (finding officers lacked reasonable suspicion to stop a person accused by an informant when officers knew the informant's identity but nothing about his reliability).

### 2.    **Objective reliance on information received**

Armed with the information about Graves, coupled with the observation that the driver of the silver car exceeded the posted speed limit, Detective Clements reached out to Officer Knopp, a K9 officer, to conduct a stop for the dual purpose of policing speeding and investigating drugs.  Officer Knopp initiated the stop in objective reliance on the information received from Detective

Clements: that the driver of the silver car engaged in excessive speed and that a man named Jared Graves, who might be the driver, was the subject of a drug investigation.

At the traffic stop, Officer Knopp confirmed the identity of the driver via his license. He alerted Detective Clements, "We just hit Jared Graves." Dkt. 37-3 at 1:47–1:49. At that point, the drug-investigation purpose of the stop legitimately displaced the speeding purpose based on reasonable suspicion that Graves was trafficking drugs.

Graves criticizes the way Detective Clements communicated his reasonable suspicion to Officer Knopp, arguing that this confirmed he lacked reasonable suspicion of drug activity. In relaying to Officer Knopp the reason for the stop, Detective Clements said Graves "supposedly" had methamphetamine in his room at home, Graves "might" have seven ounces in his car, and that Detective Clements "did not know" if it was Graves driving. Dkt. 63 at 2. Graves categorizes this language as "layered hedging." *Id.* However, this "hedging" does not show Detective Clements lacked concrete facts supporting reasonable suspicion. "Reasonable suspicion is a lower threshold than probable cause and does not deal with hard certainties, but with probabilities." *United States v. Booker*, 579 F.3d 835, 839 (7th Cir. 2009) (cleaned up) (finding reasonable suspicion to stop a van where a witness stated "I think that's the van" connected to gunshots). Detective Clements's "hedging" reflects that some of his facts were probabilities and not certainties. But that is all that reasonable suspicion requires. Under the collective action doctrine, Detective Clements had

10

reasonable suspicion, he instructed Officer Knopp to act on that suspicion, and Officer Knopp acted.

### 3.     The stop was no more intrusive than permissible

Officer Knopp's first act upon pulling over Graves's vehicle was to confirm his identity.  This act was reasonable whether the traffic stop was for speeding or a drug investigation.  Upon confirming that Graves was the driver of the silver car, the Government all but concedes that the stop was primarily in furtherance of a drug investigation and not a speeding ticket.  Accordingly, even though Officer Knopp told Graves that the reason for the stop was for "speed," Officer Knopp testified that he instructed Graves to exit the vehicle as protocol for conducting a K9 sniff.  Reasonable suspicion of drug activity independently supported this act and the K9 sniff that followed.  So, the Court need not decide whether the K9 sniff unreasonably delayed the process for issuing a speeding ticket.  *Rodriguez*, 575 U.S. at 355 (finding police cannot prolong a traffic stop to conduct investigations unrelated to traffic enforcement "absent the reasonable suspicion ordinarily demanded to justify detaining an individual"); *United States v. Yang*, 39 F.4th 893, 899 (7th Cir. 2022) (finding reasonable suspicion of drug activity independently justified traffic stop).

At this point, the traffic stop was a drug investigation supported by reasonable suspicion.  Officer Knopp decided to wait with Graves at the side of the road for approximately six minutes until another officer arrived to monitor Graves so Officer Knopp could focus on the K9 run.  Officer Knopp credibly testified that this wait was justified based on department policy, necessary to

11

ensure officer safety, and advisable for the rigor of the K9 sniff. *See Rodriguez*, 575 U.S. at 354 (conducting tasks related to the mission of the stop does not prolong the stop); *United States v. Pace*, 48 F.4th 741, 750 (7th Cir. 2022) (affirming an officer's decision to place a driver in handcuffs for officer safety before conducting a K9 sniff when he was the only officer on scene). This detention did not exceed the length of a permissible stop for a drug investigation. *See Cole*, 21 F.4th at 427 (affirming en banc a 45-minute wait for a K9 unit where officer conducting the stop developed reasonable suspicion of drug trafficking based on driver's answers to questions about his travel itinerary).

\* \* \*

In sum, the K9 sniff of Graves's vehicle during his traffic stop was supported by reasonable suspicion of drug activity under the collective knowledge doctrine. Graves's motion to suppress evidence found in the car is accordingly **DENIED.**

## B.    Home Search Warrant

Graves's objections to the search warrant for his home fare no better. The probable cause determination was supported by more than the CI's word once law enforcement established Graves's methamphetamine nexus to the home. Even assuming the issuing judge relied primarily on the CI, the Seventh Circuit's five-factor analysis for informant reliability establishes this CI as reliable enough to support a warrant. Finally, supposing probable cause was lacking, the good faith exception would still permit admission of evidence found in the home.

12

1.    **Facts collected in the investigation informed the probable cause analysis**

When reviewing an issuing judge's conclusion that a warrant was supported by probable cause, "the district court need only evaluate whether the judge had a 'substantial basis' for concluding that probable cause existed" under the totality of the circumstances. *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014) (per curiam) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The facts here are similar to those in *Kelly*. There, an officer watched a defendant leave his home, drive to a second location, and there perform a drug deal. *Id.* A CI also approached the defendant in his home and asked him for drugs, to which the defendant replied he would not sell from the house but would arrange a sale in the neighborhood. *Id.* The officer stated in his affidavit that, based on his twenty-plus years of experience in law enforcement, drug dealers are likely to keep contraband in their residences. *Id.* The court found this to be "far more evidence to support the issuance of a search warrant than we have required in other cases." *Id.* at 1081.

Consistent with *Kelly*, probable cause here was not based on the CI's information alone but also on the methamphetamine officers discovered in Graves's car immediately after he left the house targeted in the warrant. This created a nexus between drugs and the home. The fact that the silver car containing the drugs was registered to the home strengthened that nexus. But there is more. The form of the discovered methamphetamine—in two baggies each weighing around two or three grams—suggested pre-weighing and pre-packaging as part of a uniform system of drug distribution. *United States v.*

*Garrett*, 903 F.2d 1105, 1113 (7th Cir. 1990). It was reasonable to conclude more evidence of a drug distribution system was likely to be in the home Graves just left.

Probable cause was further buoyed by the CI's information that there were drugs at Graves's home and the detective's experience that people involved in drug distribution "will commonly store those substances . . . at their residences in order to hide them from law enforcement." Dkt. 59-1 at 6. Moreover, the CI had proven reliable in the past. Detective Clements did not rest on a conclusory assertion of the CI's reliability, which is disfavored by the Seventh Circuit, *United States v. Koerth*, 312 F.3d 862, 867 (7th Cir. 2002) (taking a gloomy view of a CI when all the affiant had to say was that he was "believed to be a reliable source,"). He said more. He identified two occasions where the CI's information aided police: 1) helping them secure a warrant for a house where officers then seized drugs, and 2) informing authorities of transportation of a large quantity of methamphetamine ultimately thwarted by the Indiana State Police.

Graves's motion overlooks the totality of the circumstances by framing the probable cause affidavit to rest "almost entirely" on the CI's information. Dkt. 39 at 16, 19–20. The Court's straightforward reading of the probable cause affidavit shows otherwise. When read as a whole, the probable cause affidavit gave the magistrate issuing the search warrant a "substantial basis" for finding probable cause that evidence of a crime was likely to be discovered at Graves's house.

14

## 2. The CI had sufficient reliability to support the probable cause determination

Even if the warrant was based primarily on the CI's information, the five-factor inquiry for assessing informant reliability under the totality of the circumstances establishes this CI as dependable enough to support a warrant.

> [The Seventh Circuit has] identified five primary factors, along with other pertinent concerns, that inform [the probable cause] inquiry: (1) the level of detail the informant provided; (2) the extent of the informant's firsthand knowledge; (3) the degree to which the information has been corroborated; (4) the time between the events reported and the warrant application; and (5) whether the informant appeared before the magistrate judge.

*United States v. Felton*, 159 F.4th 1128, 1133 (7th Cir. 2025) (citing *United States v. Bell*, 925 F.3d 362, 371 (7th Cir. 2019)).

The CI here provided modest levels of detail. That included estimated quantities of drugs in the home and car, Graves's identity and description, the location of his home, the description of his car, and the fact that speakers would be found in the trunk. While Detective Clements did not provide the CI's basis of knowledge in robust detail, he did write in his affidavit that the CI had been inside Graves' home in the proceeding 72 hours. That was minimally sufficient, and a three-day interval of time is fresh. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008) (describing 3-day-old information as "fresh"). Coupled with a recitation of the CI's two prior instances of successfully assisting law enforcement, these facts provide some support in favor of the CI's reliability.

15

Law enforcement corroborated the CI's information by confirming Graves's car, address, and name, the fact that he was recently in the house, and that speakers were located in his trunk. Most importantly they confirmed Graves did in fact have methamphetamine in his car—although not in the stated possible quantity or exact location. While officers could have further corroborated the CI's information through a controlled buy or other means, such a high degree of corroboration is not required. *See Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1058 (7th Cir. 2018) (finding probable cause after officers "largely took [the CI] at his word without independently corroborating much of his account" connecting drug dealing to the targeted home).

As to factor five, Detective Clements's CI did not personally appear before the issuing judge here. This factor tips against reliability.

The Court has little trouble concluding the magistrate had ample information as to the CI's reliability to form a substantial basis for issuing the warrant considering the totality of the circumstances.

### 3. The good faith exception would allow admission of the evidence found in the home in any event

Even if probable cause was lacking—again, the Court finds it was not—Graves's motion to suppress would be denied. "[T]he exclusionary rule is designed to deter police misconduct . . . ." *United States v. Leon*, 468 U.S. 897, 916 (1984). Excluding evidence gained by an officer acting with objective good faith by obtaining a search warrant does not serve this purpose. *Id.* at 920. "An officer's decision to obtain a warrant is *prima facie* evidence that he or she was

16

acting in good faith." *United States v. Searcy*, 664 F.3d 1119, 1124 (7th Cir. 2011).

> A defendant can rebut the presumption of good faith only by showing (1) that the issuing judge abandoned his or her detached and neutral role, (2) the officers were dishonest or reckless in preparing the affidavit, or (3) the warrant was so lacking in probable cause as to render the officer's belief in its existence entirely unreasonable.

*Id.* (citing *Koerth*, 312 F.3d at 869 and *United States v. Otero*, 495 F.3d 393, 398 (7th Cir. 2007)).   The defendant bears the burden of satisfying one of these exceptions.   *Id.*   Graves does not argue that the issuing magistrate showed partiality.  And he fails to prove that the remaining exceptions apply.

First, the search warrant was not plainly deficient.  The same facts that convince the Court of probable cause also show that it would not be unreasonable for a well-trained officer to conclude that probable cause existed. *See supra* Section II.B.1 & 2.

Second, the Court finds that Officer Clements was not dishonest or reckless in preparing the affidavit.  Graves argues that omissions regarding the "bad" tip and the CI's credibility show reckless disregard for the truth.  Dkt. 39 at 24 (citing *Felton*, 159 F.4th at 1135); Dkt. 53 at 1 (same).  In *Felton*, police did not corroborate any of the drug activity in which the defendant allegedly engaged. 159 F.4th at 1135.   Here, Detective Clements's affidavit included concrete evidence of drug activity: the methamphetamine found in Graves's car.  Graves has not shown Detective Clements's omission of other information was to mislead because an affiant need not include every detail of an investigation in

their probable cause affidavit.  *See United States v. McMurtrey*, 704 F.3d 502, 511 n.5 (7th Cir. 2013) ("The police need not report every dead end or dry hole in the investigation.").

Graves also argues that Detective Clements's remark to Graves that a search warrant "may not be granted" shows he knew probable cause was lacking, thereby indicating a reckless disregard for truth.  Dkt. 53 at 2.  But the Court finds that this comment, on its face, is simply a reference to the fact that it is the issuing judge's job—not Detective Clements's—to determine whether a probable cause supports a warrant.  Detective Clements's acknowledgement that he did not control whether a warrant would issue is not evidence of a plainly deficient affidavit.  Further, the Court also finds that the camera footage shows that Detective Clements made this comment as he was explaining to Graves the next step in the process as part of his ongoing investigation into Graves's alleged drug activity, Dkt. 51-1 at 4:15–6:00, not admitting that he had a weak basis to seek a search warrant of his home.

Graves also highlights the fact that shortly after Detective Clements's conversation with Graves about the investigation and search warrant plans, "Officer Knopp deliberately turned off the audio on his camera."  Dkt. 53 at 2 (citing Dkt. 37-3 at 23:57–24:50); *see also* dkt. 51-1 at 6:12–7:04.  Officer Knopp acted at the direction of Detective Clements, and indeed, the body camera footage shows Detective Clements telling Officer Knopp "can you mute," before the audio goes mute.  Dkt. 51-1 at 6:12–6:15.  Graves says this is evidence of an intent to hide something (Graves does not say what), which Detective Clements

18

purportedly left out of the search warrant affidavit.  But as Office Knopp credibly testified, muting body camera audio is standard protocol for discussing sensitive Vigo County DTF information to protect the integrity of the investigation, potential victims, or confidential informants.  *See also* dkt. 59-7 at 2.  The Court declines to find on these conclusory allegations that following protocol is evidence of reckless intent to mislead the magistrate who issued the warrant.

Thus, the good faith exception would apply to allow admission of the evidence found in the warranted search of Graves's home even in the event the search warrant affidavit failed to provide a substantial basis for a finding of probable cause.

## C.    *Franks* Hearing

Graves argues that the Court should order a *Franks* hearing to permit him to further explore the possibility that Detective Clements showed a reckless disregard for truth in seeking a warrant.  As previewed from the bench, Graves's motion for a *Franks* hearing is denied.

"There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant."  *Franks*, 438 U.S. at 171.

> To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. Challenges to the veracity of a warrant affidavit must be more than conclusory. A defendant must be able to point to specific omissions or misrepresentations in the affidavit—mere negligent or innocent mistakes are not enough. However, to secure a *Franks* hearing, defendants face a burden of

19

> production only: proof by a preponderance of the evidence is not required until the *Franks* hearing itself.

*United States v. Maxwell*, 143 F.4th 844, 854 (7th Cir. 2025) (cleaned up). When the defendant argues "police deliberately or recklessly omitted information so as to mislead the magistrate, the standard is even a little more demanding." *McMurtrey*, 704 F.3d at 511 n.5. "[A] defendant . . . must show that a material omission was designed to mislead or was made in reckless disregard of whether it would mislead." *Id.* (citing *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008)).

Graves argues there are omissions here—namely, Detective Clements's failure to include in the affidavit either the CI's "bad" tip that seven ounces of methamphetamine would be found in the car trunk's speakers or information about the CI's credibility. But Graves has not made a substantial preliminary showing that such omissions were false or material, especially where the CI was correct in many other regards.

Graves did have methamphetamine in his car; indeed, one of the bags was found in the trunk near the speakers—speakers which a member of the public would not know to be in the trunk at all. Discrepancy in the precise weight is not a material omission under the totality of the circumstances. *United States v. Clark*, 935 F.3d 558, 565 (7th Cir. 2019) ("Our *Franks* hearing cases show that when police have sufficiently corroborated an informant's tip, the omission of facts pertaining to the informant's credibility may not be material."); *see also United States v. Hecke*, 147 F.4th 742, 750 (7th Cir. 2025), cert. denied, --- S.Ct. ----, 224 L. Ed. 2d 15 (Feb. 23, 2026) ("[W]e do not require a *Franks* hearing every

time an affidavit omits credibility information about the informant."). And as discussed above, the affidavit did provide some concrete information about the CI's credibility that Graves has not rebutted with any designated evidence. *Cf. United States v. Harris*, 464 F.3d 733, 736 & 740 (7th Cir. 2006) (ordering a *Franks* hearing after the defendant submitted multiple affidavits rebutting specific observations the officer and CI claimed in the probable cause affidavit to have made).

What's more, even if Detective Clements had included the "bad" tip in his affidavit, it would not have altered the probable cause determination. As described above, the fact-specific inquiry under the totality of the circumstances gave rise to probable cause. Those facts included the previous reliability of the CI, law enforcement's corroboration of the CI's information, and the discovery of methamphetamine in Graves's car immediately after he left the home targeted in the search warrant. *McMurtrey*, 704 F.3d at 508 ("To obtain a hearing, the defendant must also show that if the deliberately or recklessly false statements were omitted, or if the deliberately or recklessly misleading omissions included, probable cause would have been absent.").

Graves has accordingly not made the substantial preliminary showing required for the Court to set a *Franks* hearing.

### III. CONCLUSION

For the reasons above, the Government has met its burden to show by a preponderance of the evidence that reasonable suspicion supported prolonging the traffic stop to conduct a K9 sniff. The court issuing the search warrant for

Graves's home had a substantial basis to find probable cause to issue the warrant. The good faith exception applies in any case. And Graves has not made the substantial preliminary showing required for a *Franks* hearing. The Court accordingly **DENIES** Graves's motions to suppress, dkts. [37] and [51], and motion for a *Franks* hearing, dkt. [39] at 25.

**SO ORDERED.**

Date: 5/14/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

Patrick Gibson
DOJ-USAO
patrick.gibson@usdoj.gov

Cristina Caraballo-Colon
DOJ-USAO
Cristina.Caraballo.Colon@usdoj.gov

Lawrence Darnell Hilton
Fisher & Phillips
lhilton@fisherphillips.com